BENJAMIN ARONOFF, Appellant, *v.* BELDON
KATLEMAN, EL RANCO, INC., a Nevada Cor-
poration, and EL RANCO HOTEL OPERATING
CO., a Nevada Corporation, Respondents.

No. 4223

October 26, 1959                    345 P.2d 221

*Goldwater, Singleton, Dickerson and Miles,* of Las
Vegas, for Appellant.

*Morse, Graves & Compton,* of Las Vegas; *Woodburn,
Forman, Wedge, Blakey and Thompson,* of Reno; *Leo
K. Gold,* of Beverly Hills, California, for Respondents.

## O P I N I O N

By the Court, PIKE, J.:

Appeal from an order of the trial court granting a preliminary injunction enjoining appellant from declaring a default on, negotiating, or bringing any attachment proceeding with reference to a certain promissory note executed by plaintiff.

Appellant Aronoff (defendant below) is hereinafter referred to as Aronoff, and respondents Katleman, El Ranco, Inc., a Nevada corporation, and El Ranco Hotel Operating Co., a Nevada corporation (plaintiffs below) are referred to as Katleman. Katleman controls the two respondent corporations.

Prior to January 1, 1958 Katleman had been the sole owner of El Ranco Hotel Operating Co., a corporation,

which operated the El Rancho Vegas Hotel in Las Vegas, including its gambling, restaurant and bar. On January 1, 1958 Aronoff paid Katleman $500,000 for a one-half interest in said El Ranco Hotel Operating Co. By written agreement dated April 1, 1958 Katleman agreed to repay the $500,000 to Aronoff for the return of the one-half interest, less one-half the amount of the operating losses for the period from January 1, 1958 to April 1, 1958. Aronoff was also to be credited for any profits accruing from revenue during the remainder of 1958. It was agreed that the amount of the operating losses and of any profits during the periods indicated were to be ascertained by accountants engaged by the respective parties.

On April 29, 1958 the accountants made a partial accounting to the parties covering the first three months of 1958 showing an operating loss for that period of $292,658.01 plus $4,875, plus an undetermined insurance expense.

On February 16, 1959 Aronoff sued Katleman for $398,369 as the amount claimed to be due and unpaid to him pursuant to the agreement and caused an attachment to be levied against Katleman's property. The attachment halted the operations of El Rancho Vegas Hotel. Aronoff and Katleman and their counsel conducted negotiations as a result of which Aronoff caused the attachment to be released on February 18, 1959. In connection with such negotiations on the same date Katleman delivered to Aronoff a non-interest bearing negotiable promissory note in the sum of $315,869, which provided for monthly installment payments and acceleration of the entire balance at the option of the holder in the event of default of any payment. Concurrently the parties entered into a written agreement giving Aronoff the right to waive the security of a deed of trust given to secure payment of the promissory note and to avail himself of all remedies provided by law in connection with the enforcement of the payment of said note. Katleman also paid the sum of $100,000 to Aronoff and canceled certain other indebtedness claimed to be owed him by Aronoff.

The suit brought by Aronoff was not dismissed, and the attachment bond for more than $90,000 remains on file with the clerk of the trial court conditioned that Aronoff will pay all costs awarded to Katleman and all damages which may have been sustained by him by reason of the attachment.

Katleman thereafter made the $25,000 payment due on the note on April 1, 1959 and similar payments in like amount on May 1 and June 1, 1959. However, prior to a $50,000 payment becoming due on the note on July 1, 1959 Katleman commenced the present suit. Katleman's first amended and supplemental complaint against Aronoff was filed on June 16, 1959. Among other things it alleged that Katleman executed and delivered to Aronoff the promissory note and accompanying documents by reason of duress and business compulsion. Such complaint further alleged the written agreement between the parties of April 1, 1958, the partial accounting for the three months' period ending March 31, 1958, the halting of the hotel operations through the attachment suit brought by Aronoff on February 16, 1959, the expenses incurred by Katleman during the three days that the hotel operations were stopped by the attachment, and the negotiations between the parties including the payment of $100,000, and the delivery to Aronoff by Katleman of the promissory note and the other considerations already referred to.

The complaint also alleges that, under the partial accounting made, the one-half of the operating loss of the first three months of 1958 chargeable to Aronoff amounts to $232,464.78 and that such sum should be credited against the $500,000 owed to Aronoff by Katleman. The complaint further alleges additional amounts claimed to be due to Katleman or the respondent corporations, sums covering hotel bills totaling $11,404.36, $8,000 due Katleman from Aronoff since October 1, 1958 (the basis of which indebtedness is not alleged) and alleges items of $7,500 and $3,000 as attorney's fees paid on Aronoff's behalf in 1958.

Additional allegations of the complaint are that El Ranco Hotel Operating Co. suffered an immediate oper-

ating loss of $38,104.94 by reason of the attachment. In addition, damage to the general business reputation and good will of such corporation is alleged in the amount of $150,000 and punitive damages for $100,000 are sought. The complaint alleges that the amount of the promissory note does not correctly state the balance owed by Katleman to Aronoff, alleges the payment of the $100,000 and the three monthly payments of $25,000 each made on the note in order to avoid a repetition of the attachment proceedings, and alleges that a controversy exists which should be expeditiously adjudicated by the court and prays "that the court adjudicate and declare the true balance, if any, owing by and to the parties," and for special, general and exemplary damages and for general relief. No injunctive relief was sought at the time that Katleman's complaint was filed.

Aronoff's answer was filed June 18, 1959 which, among other things, specifically denied that Aronoff owed any of the sums sought in Katleman's complaint, and that any of the payments made by Katleman were made in order to avoid repetition of attachment proceedings, and denies that there is a controversy as to the true balance of the promissory note. As a matter of affirmative defense it alleges Katleman's refusal to comply with the agreement of April 1, 1958, the bringing of the attachment suit and its dismissal in consideration of the delivery of the promissory note, and the payment of the other considerations by Katleman to Aronoff. Certain counterclaims are likewise asserted by Aronoff which allege conditions under which Aronoff paid the $500,000 to Katleman and the circumstances which caused him to request its return and the negotiations leading to the execution by the parties of the agreement of April 1, 1958 which Aronoff alleges he would not have executed except for duress and business compulsion asserted against him by Katleman.

The second counterclaim alleges the agreement and exchange of valuable considerations by the parties of February 18, 1959 and the bringing of the present suit after such compromise and settlement of differences

between the parties. Aronoff asks that the judgment be given against Katleman for the sums found to be due to Aronoff and for damages in the sum of $100,000 occasioned by the bringing of the present suit by Katleman.

On June 26, 1959 Katleman filed his motion for preliminary injunction supported by his affidavit. Aronoff filed a motion to quash such application, which motion was supported by Aronoff's affidavit. Katleman's affidavit incorporated the allegations of his complaint into the affidavit by reference thereto. The motions were heard simultaneously and the court granted the preliminary injunction and ordered that Katleman file bond in the sum of $50,000 conditioned for the payment of costs and damages to any party found to have been wrongfully enjoined or restrained.

Aronoff contended that as the attachment statutes[1] specifically prescribe complete, valid and adequate legal rights and remedies applicable to this situation for the protection of the rights of both parties, the trial court exceeded its jurisdiction in granting the equitable remedy of injunctive relief.

---

[1]NRS 31.010. "The plaintiff at the time of issuing the summons, or at any time afterwards, may have the property of the defendant attached as security for the satisfaction of any judgment that may be recovered, unless the defendant gives security to pay such judgment, as hereinafter provided * * *."

NRS 31.030 (1) "Before issuing the writ, the clerk shall require a written undertaking on the part of the plaintiff payable in lawful money of the United States, in a sum not less than $200, and not less than one-fourth of the amount claimed by plaintiff, with two or more sureties to the effect that if the plaintiff dismiss such action or if the defendant recover judgment the plaintiff will pay in lawful money of the United States all costs that may be awarded to the defendant, and all damages which he may sustain by reason of the attachment including attorney's fees, not exceeding the sum specified in the undertaking. * * *"

NRS 31.040. "The writ shall be directed to the sheriff of any county in which property of such defendant may be, and require him to attach and safely keep all the property of such defendant within his county not exempt from execution, or so much thereof as may be sufficient to satisfy the plaintiff's demand, the amount of which shall be stated in conformity with the complaint, unless the defendant give him security by the undertaking of at least two sufficient sureties in an amount sufficient to satisfy such demand,

Katleman, on the other hand, stated that he delivered the note only by reason of duress and business compulsion. He argued as a basis for injunctive relief that he (Katleman) was apprehensive that if the $50,000 payment due on the note of July 1, 1959 was not paid Aronoff would exercise his option to declare the entire balance of the note payable, and attach, and that Katleman would not then be in a position to give a release of attachment bond in double the amount of the demand, and that heavy business losses and damage to him would ensue, and therefore by judicial authority and statute[2] he is entitled to a preliminary injunction to prevent such acts during the pendency of the suit.

It is not denied that on April 1, 1958 a total of $500,000 less one-half of the operating losses was owing by Katleman to Aronoff. The figures submitted by the accountants as operating losses for the first three months of 1958 when considered with the $175,000 already paid and all setoffs claimed by Katleman in his

besides costs, in the money or currency of the contract, in which case to take such undertaking. Several writs may be issued at the same time to the sheriffs of different counties."

NRS 31.180. "Whenever the defendant shall have appeared in the action, he may apply, upon reasonable notice to the plaintiff, to the court in which the action is pending, or to the judge thereof, for an order to discharge the attachment, wholly or in part, upon the execution and filing of the undertaking mentioned in NRS 31.190. Such order may be granted directing the release from the operation of the attachment, upon the filing of such undertaking and the justification of the sureties thereon, if required by the plaintiff, of all or any part of the property, money, debts or credits attached, as the case may be. All the proceeds of sales and moneys collected by the sheriff, and all the property attached remaining in his hands, so released, shall be delivered or paid to the defendant upon the filing of such undertaking and making such justification, if required by the plaintiff."

NRS 31.190 (1) "On granting such order, the court or the judge shall require an undertaking on behalf of the defendant, with at least two sureties, residents and freeholders, or householders, in the county, which shall be filed:

"(a) To the effect, in case the value of the property or the amount of money, debts, or credits sought to be released shall equal or exceed the amount claimed by the plaintiff in the complaint, that the defendant will pay to the plaintiff the amount of the judgment which may be recovered in favor of the plaintiff in the action not

complaint but not including general unliquidated or exemplary damages sought by him show a sum in excess of $60,000 still due from Katleman to Aronoff at the time that this suit was brought. Katleman has not pleaded or asserted his inability to pay the $50,000 due on the note on July 1, 1959 and has not made any tender of this amount or any portion of the same. Monthly payments of $50,000 each for four months commencing July 1, 1959 are required by the terms of the note, with the final payment due and payable on November 1, 1959. To date, by reason of the authority of the injunction, Katleman has been relieved of making these monthly payments.

Appellant argues at considerable length that as the relief obtained from the temporary injunction is equitable in its nature, Katleman's failure either to do equity or to offer to do equity or to come into court with clean hands precluded his right to the equitable relief accorded him. Although there appears to be merit in this contention, we find it unnecessary to discuss the same or to rely upon it in our disposition of the appeal.

---

exceeding the sum specified in the undertaking, which shall be at least double the amount so claimed by the plaintiff, and in the money or currency of the contract; or

"(b) To the effect, in case the value of the property or the amount of money, debts, or credits sought to be released shall be less than the amount so claimed by the plaintiff, that the defendant will pay the amount of such judgment, to the extent of the value of the property, or amount of money, debts, or credits sought to be released, not exceeding the sum specified in the undertaking, which shall be at least double the amount of such property, money, debts or credits, and in the money or currency of the contract. * * *"

[2]NRS 33.010. "An injunction may be granted in the following cases:

"1. When it shall appear by the complaint that the plaintiff is entitled to the relief demanded, and such relief or any part thereof consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually.

"2. When it shall appear by the complaint or affidavit that the commission or continuance of some act, during the litigation, would produce great or irreparable injury to the plaintiff.

"3. When it shall appear, during the litigation, that the defendant is doing or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual."

While Katleman contends that the complaint seeks declaratory relief there are no allegations in the complaint or in the prayer seeking to have the court determine any legal right relating to the promissory note. The court is asked to adjudicate and declare the true balance, if any, owing Katleman and to the parties. The motion for injunctive relief was not filed concurrently with the complaint, but on June 26, 1959, some ten days later.

While the broad scope of actions in which declaratory relief may be granted to determine the legal status and rights of the parties is recognized, a declaratory judgment in essence does not carry with it the element of coercion as to either party. Rather, it determines their legal rights without undertaking to compel either party to pay money or to take some other action to satisfy such rights as are determined to exist by the declaratory judgment. See Nevada Management Co. v. Jack, 75 Nev. 232, 338 P.2d 71; 15 Cal.Jur.2d, Declaratory Relief, sec. 5; 62 Harvard L.Rev. 787.

This court recently held in Nevada Management Co. v. Jack, supra, that, under appropriate circumstances, a declaratory judgment may be coupled with injunctive relief. However, even if it be assumed that Katleman's complaint may properly be construed as a complaint seeking declaratory relief, the circumstances of the nature justifying injunctive relief in the Nevada Management Co. v. Jack case, supra, do not appear in the instant case. Viewed most favorably to the pleader in this aspect, the complaint shows that it seeks declaratory relief only as to any balance due either party, which is more in the nature of an accounting, and under its allegations would require a trial upon the merits, rather than in a preliminary proceeding under the guise of injunctive relief to preserve the status quo. Under the circumstances, there would seem to be a serious question as to the propriety of granting preliminary injunctive relief. See City of San Diego v. Cuyamaca Water Co.,

209 Cal. 105, 287 P. 475. We pass, however, to the main assignment of error, whose resolution must guide us in the disposition of this appeal.

The basic question is whether, under the stated facts, the relief afforded to Katleman by the Nevada attachment statutes is full and adequate. We believe that it is. Under such statutes Katleman has the opportunity to post bonds under the various contingencies provided by such statutes.

Katleman complains of the harshness of the provisions of the Nevada attachment statutes. The statutes can be viewed as having received the consideration of the legislature as recently as the time when they were amended in 1957 and, if harsh, their possible modification would necessarily have to be taken care of by way of legislative enactment.

Here the statutes (having given a right to Aronoff to sue on his note and to secure by attachment the benefits of any judgment obtained against Katleman) likewise provided to Katleman a complete protection against the attachment and the remedy by which such relief might be obtained. This was twofold—either by a bond to prevent the attachment or a bond to release the attached property. This provided a complete and valid remedy for the right thus created, and the right and remedy thereby given are exclusive. Valley Drive-In Theatre Corp. v. Superior Court, 79 Ariz. 396, 291 P.2d 213. It was error for the court below to substitute for this remedy and its fixed requirements for bond an equitable remedy by way of a preliminary injunction conditioned on the posting of a materially smaller bond, in an amount fixed in the court's discretion.

No showing was made before the trial court and none is made here that the performance of any of the acts restrained, other than attachment, would result in any immediate and irreparable injury to Katleman. Enjoining such acts was error. 27 Cal.Jur.2d, Injunctions, sec. 8.

Reversed, with costs to appellant, and remanded with instructions to the trial court to grant Aronoff's motion to quash Katleman's motion for preliminary injunction,

434

and to dissolve such preliminary injunction. Remittitur to be issued forthwith inasmuch as the trial on the merits below has been set for December 7, 1959.

McNAMEE, C. J., and BADT, J., concur.